## WALTHALL v BOARD OF COUNTY COMMISSIONERS OF GREENE CO

Ohio Appeals, 2nd Dist, Greene Co

No 398.   Decided June 12, 1934

L. T. Marshall, Xenia, Dean E. Stanley, Lebanon, and C. Donald Dilatush, Lebanon, for plaintiff in error.

Marcus E. McCallister, Prosecuting Attorney, Xenia, Miller & Finney, Special Counsel, Xenia, for defendant in error.

## OPINION

By BARNES, J.

The evidence establishes conclusively that the driver of the automobile in which plaintiff was riding (being the mother of plaintiff) lost control of the machine when some 150 feet south of the entrance to the bridge. The only occupants of the car were the plaintiff and her young son and the driver, the mother of plaintiff. The mother died a few days after the accident and therefore her testimony was not available. The young son was not presented as a witness. Plaintiff in her petition says that the car went off the road on the west side or their left hand side about 40 feet south of the entrance to the bridge.

Plaintiff in her testimony says that she is somewhat confused in her remembrance of the happenings of the accident and immediately preceding it. She says it seemed to her that the car went off to the right and then directly over to the left and over the wing wall into the creek.

Two witnesses were called who claimed to have examined the tracks within an hour or two after the accident. One, a Mr. Herbert Meredith called by plaintiff, a farmer living a short distance from the scene of the accident. In cross examination he says the tracks were discernible on the berm and soft gravel; that the automobile at a distance of approximately 150 feet from the entrance of the bridge veered to the right and followed a rut for a short distance, then crossed over to the left berm for a short distance, then back again to the right and then again to the left and down over the shoulder of the berm; that this point was about 40 feet south of the entrance to the bridge. The next mark that he mentions is where the fender struck the left girder of the bridge as the automobile went over the wing wall into the creek. At this 40 foot station where the automobile went off the berm and on the shoulder on its left hand side of the road the approach was much less than six feet in depth. From this 40 foot station there is no evidence as to whether or not the automobile regained its position within the bounds of the 14 foot roadway.

Another witness, Harry Meredith, a brother of Herbert, called by defendant says that he with his brother examined the tracks of the automobile and they corroborate each other as to the zigzagging course down the road to the point where the car left the berm about 40 feet south of the end of the bridge. He says at this point the car went clear off the berm.

A Mr. Whittaker, brother-in-law of Mr. Meredith, was visiting in his home on the day of the accident and in his deposition gives testimony as to certain phases of the accident. His testimony does not lend any aid as to where the automobile left the road.

No other witnesses are presented as to the movement of the car immediately preceding the accident. Under the uncontradicted evidence in connection with plaintiff's petition, we think she fails to show any right of recovery against the county and that the court should have sustained defendant's motion to direct a verdict at the close of plaintiff's case and renewed after all the evidence had been submitted. Giving the testimony the most favorable interpretation to plaintiff's right to recover, we find the car going off the west side of the road at a point where admittedly no guard rails were required. Giving to the evidence the same favorable construction, guard rails would be required no more than 21 feet from the end of the bridge. If guard rails had been constructed for this distance of 21 feet, it could not have prevented the car going off where it did, being a distance of 40 feet from the end of the bridge. Plaintiff's petition says it went off the road 40 feet from the end of the bridge and all other witnesses corroborate this part of the petition with no testimony to the contrary. There is no testimony that the automobile thereafter regained a position within the 14 foot roadway. It is just as inferable as otherwise that the car, after going off the 14 foot roadway, proceeded directly north and over the wing wall as otherwise. If a guard rail had been constructed from the end of the bridge along the approach for a distance of 21 feet, it is also inferable that the car could have continued its course from the 40 foot station to the west of the guard rail to the wing wall. The proper location for the guard rail, if required, would have been from the end of the bridge at the edge of the berm

and extending south not more than a distance of 21 feet. Under a proper construction, no part of the guard rail would have been farther west than the most westerly portion of the bridge. We made this observation by reason of the fact that the uncontradicted testimony discloses the roadway of the bridge to be 16 feet wide, whereas, the road including berms was only 14 feet. Under the state of the record, we find the case to be on all fours with that of the **Board of Commissioners of Franklin County v Darst, 96 Oh St, 163.** In the reported case the plaintiff was a guest passenger in a horse propelled vehicle. Under the statement of the case it was shown that the driver of the horse drove off the road at a point where the slope was only 2 feet deep. After driving a short distance, he plunged over a shelving wall, which constituted part of the abutment extending westwardly from the approach. In the Common Pleas Court there was a verdict and judgment for claimant. The Supreme Court reversed and rendered final judgment for the County Commissioners. Syllabus 3 reads as follows:

"Such section requires the board to erect guard rails on each side of every embankment or approach to county bridges only at such points where the embankment or approach is more than six feet high; and for a failure to comply with the requirement of that or the succeeding section, the county may be held liable for damages resulting from such failure."

An examination of the record discloses that counsel for plaintiff at all times held to the theory that plaintiff's right of recovery could and should be predicated on the fact that there was no guard rail on the wing wall.

The trial court in his rule on motion to the pleading and throughout the trial held that there was no statutory requirement to place guard rails upon this wing wall and we think properly eliminated this question as an issue in the case. The second syllabus in 96 Oh St, supra, reads as follows:

"Unless provided by statute, there can be no liability for negligence against the board in their quasi-corporate capacity. The duty imposed by said section is not limited by the discretion of the board, nor subject to the contingency that necessities may or may not require the erection of guard rails at particular points on such approach."

Unless the guard rail sections above referred to may be given a construction to require guard rails on the wing wall, no liability can be imposed for the failure so to do. We do not think the language will permit of any such construction and in this conclusion, we have the support of the Supreme Court in the reported case above referred to.

Under the facts that are not in dispute in the present case, we would have no hesitancy in saying that the Commissioners should erect a guard rail from the end of the bridge along the west berm of the road, a distance of approximately 5 feet. At this point and for this distance the approach was 16 feet high. We arrive at this 5 feet by reason of the angle of the wing wall.

If there was evidence or if it was fairly inferable that the car had gone down the 14 foot roadway and then suddenly veered to its left and over the wing wall, then we think there would have been shown a right of recovery. We have just now and previously used the expression "fairly inferable." It may be thought we are indulging on inferences in favor of the defendant. The answer is that the burden is upon the plaintiff and while we may indulge inferences favorable to the plaintiff, if the evidence will permit, we can not so do if the evidence is to the contrary or there is no evidence at all. Having determined that, under the record, the plaintiff under no circumstances could recover, it renders unnecessary consideration of the several grounds of error urged by counsel for plaintiff. We might say, however, that before arriving at our present conclusion, we examined very carefully the specific grounds of error set out in the petition in error. We find no prejudicial error in the record. The judgment of the court below will be affirmed and costs adjudged against the plaintiff in error.

Exceptions will be allowed.

HORNBECK, PJ, concurs.